**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>Plaintiff,<br><br>v.<br><br>**[1] SIXTO J. COLÓN-TORRES**<br>**[2] FELIX A. RAMOS-ROHENA,**<br>Defendants. | Criminal No. 20-175 (ADC) |

**REPORT AND RECOMMENDATION**

### I.   Introduction

On May 28, 2020, the Grand Jury returned a two-count indictment charging Defendants Sixto J. Colón-Torres and Felix A. Ramos-Rohena with conspiracy to possess with intent to distribute controlled substances (five (5) kilograms or more of cocaine) and possession with intent to distribute controlled substances (five (5) kilograms or more of cocaine) in violation to 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii) and 846. Docket No. 20.

On October 1, 2020, Defendant Ramos-Rohena filed a motion to suppress. Docket No. 46. Defendant Ramos-Rohena sustains that, on May 7, 2020, he travelled by ferry from Culebra to Ceiba. That upon arrival he and others were ordered to disembark, make a line, and put their bags on the ground in front of them so that a canine could sniff all bags. Id. Defendant Ramos-Rohena further sustains that he was not informed that the search was voluntary, that the only exit was blocked by law enforcement, and that he was unreasonably searched in violation of his rights under the Fourth Amendment. Id. In his declaration under penalty of perjury, Defendant Ramos-Rohena avers that the canine made various unsuccessful attempts at his bag and that it was not until the handler touched the bag that the dog alerted to it. Docket No. 46-1. And that he was not asked for permission to open his bag but rather ordered to do so. Id. The Government opposed. Docket No. 53. Defendant Ramos-Rohena replied. Docket No. 54. On December 11, 2020, Defendant Colón-Torres joined the motion to suppress. Docket  No. 61.

USA v. Colón-Torres
USA v. Ramos-Rohena
Crim. No. 20-175 (ADC)
Report and Recommendation

The motion was referred to the undersigned for an evidentiary hearing and a Report and Recommendation. Docket No. 71. An evidentiary hearing was held on April 20, 2022, April 28, 2022, and May 6, 2022. The Government called FBI TFO Luis Edgardo Martínez-Rodríguez, PRPD FURA Officer Ishmael Feliciano-Mercado, and FBI TFO Christopher Esteves-Díaz to the stand. The defense called Defendant Ramos-Rohena. Evidence was admitted, including a video recording of the events that transpired on May 7, 2020. The parties submitted post-hearing briefs. After carefully considering the evidence presented during the hearing, the Court recommends that Defendants' motions to suppress be **DENIED**.

## II. Background

The following account is drawn from the evidence, testimonial and documentary, received at the suppression hearing. On May 7, 2020, FBI TFO Luis Edgardo Martínez-Rodríguez received a call from a non-paid informant of the Puerto Rico Police Department. Transcript ("TR") April 20, 2022 at p. 9 ¶¶ 9-25. The informant told Martínez-Rodríguez that, in a ferry arriving from Culebra to Ceiba, there would be two males—one with red shirt and another with gray shirt, one carrying a blue and black bag and another a black bag—who would be carrying kilos of cocaine. Id. at p. 9 ¶¶ 9-25, p. 13 ¶¶ 6-7. The informant described the two males as dark skinned, one heavy and another thin. Id. at p. 23 ¶¶ 10-12. According to Martínez-Rodríguez, the informant did not give him an exact time of arrival at Ceiba, but the information was "hot"; the ferry was leaving Culebra at the time of the call. Id. at p. 11 ¶¶ 6-8, p. 36 at ¶¶ 3-5. The informant was unpaid. Id. at p. 9 ¶ 9. The informant had previously provided truthful information that had led to three (3) interventions resulting in seizures in the ferry terminal. Id. at p. 10 ¶¶ 1-7, p. 50 ¶¶ 21-24, p. 56 ¶¶ 12-24.

Martínez-Rodríguez testified that he had known the informant for five (5) months prior to the intervention and that the conversation with the informant lasted seven to eight minutes but that he did not inquire as to the basis of his knowledge. Id. at p. 50 ¶¶ 4-20, p. 51 ¶¶ 11-13. Martínez-Rodríguez, who was on vacation on May 7, 2020, called FBI TFO Christopher Esteves-Díaz and provided him with the tip. Id. at p. 11 ¶¶ 10-22. He also called FURA Officer Ishmael Feliciano-Mercado, who was closer to the ferry terminal, and provided him with the tip. Id. Martínez-

2

USA v. Colón-Torres
USA v. Ramos-Rohena
Crim. No. 20-175 (ADC)
Report and Recommendation

Rodríguez failed to create a written account of the informant's tip even though a report might have been required. Id. at p. 26 ¶ 9, p. 27 ¶¶ 22-25, p. 43 ¶¶ 17-21.

Feliciano-Mercado testified that, on May 7, 2020, he received a call from Martínez-Rodríguez, who provided the information of the two males as described in the foregoing paragraph. Id. at p. 65 ¶¶ 5-22. Feliciano-Mercado went to the terminal and arrived prior to the arrival of the ferry from Culebra. Id. at p. 65 ¶¶ 23-25, p. 66 ¶¶ 1-6. The crew of the ferry instructed the passengers to disembark. Id. at p. 100 ¶¶ 13-14. Feliciano-Mercado testified that he identified the Defendants "right at the outset" upon disembarking the ferry. TR April 28, 2022 at p. 37 ¶¶ 16-23. Feliciano-Mercado instructed all passengers (approximately 17) to stand in line in front of a back fence and to place their bags on the floor. TR April 20, 2022 at p. 89 ¶¶ 6-19.

Esteves-Díaz testified that, on May 7, 2020, he received a call from Martínez-Rodríguez. TR May 6, 2022 at p. 64 ¶¶ 4-24. According to his testimony, the description of the Defendants that was provided by Martínez-Rodríguez was that of two males of brown skin, one with grey shorts. Id. Esteves-Díaz arrived at the terminal after Feliciano-Mercado. Esteves-Díaz was not in charge of the intervention on that day; he was assisting Feliciano-Mercado. Id. at p. 82 ¶¶ 10-14, p. 89 ¶¶ 12-13. Esteves-Díaz was the handler of K-9 Onyx and he walked Onyx down the line of disembarked passengers to sniff all bags.

K-9 Onyx first alerted to the bag of Defendant Colón-Torres. Government Exhibit 10. Defendant Colón-Torres' bag was blue and black, and he was wearing a gray shirt. TR April 20, 2022 at p. 87 ¶¶ 20-21. Feliciano-Mercado approached Defendant Colón-Torres and informed him that the K-9 had alerted to the bag and asked whether he was the owner of the bag. Id. at p. 77 ¶¶ 4-22. Defendant Colón-Torres informed that he was. Id. Defendant Colón-Torres bent over and opened his bag and, when clothing inside the bag was moved, Feliciano-Mercado identified what in his experience were bricks of packed cocaine. Id. at p. 78 ¶¶ 1-10; TR May 6, 2022 at p. 43 ¶¶ 17-19. Feliciano-Mercado informed Defendant Colón-Torres of his rights and asked him to turn and kneel. TR April 20, 2022 at p. 78 ¶¶ 1-10. K-9 Onyx then alerted to Defendant Ramos-Rohena's bag. Government Exhibit 10. Defendant Ramos-Rohena's bag was black and gray, and he was wearing a red shirt. TR April 20, 2022 at p. 87 ¶¶ 20-21. He confirmed being the owner of the bag, he bent over and opened his bag. Id. at p. 79 ¶¶ 14-25, p. 80 ¶¶ 1-11. Feliciano-Mercado

3

**USA v. Colón-Torres**
**USA v. Ramos-Rohena**
**Crim. No. 20-175 (ADC)**
**Report and Recommendation**

saw the bricks of packed cocaine. Id. Feliciano-Mercado read Defendant Ramos-Rohena his rights and placed him under arrest. Id.

The intervention was recorded in a surveillance video of the ferry. Government Exhibit 10. The video is 10:49 minutes long. As portrayed in the video, the intervention lasted approximately seven (7) minutes— from the time the passengers disembarked the ferry to the time Defendants were placed under arrest. Also, as portrayed in the video, only two (2) agents participated in the intervention up to the time of the arrests and at least one of the agents (Feliciano-Mercado) was not in uniform. Government Exhibit 10; TR April 20, 2022 at p. 73 ¶¶ 13-14; TR of May 6, 2022 at p. 22 ¶¶ 10-22. Both officers were armed but neither took out or brandished their firearm. TR May 6, 2022 at p. 43 ¶¶ 8-13, p. 48 ¶¶ 24-25, p. 49 ¶¶ 1-4. Later that night, both Defendants signed consent forms for the search of their respective bags. Government Exhibits 5-6. Feliciano-Mercado testified that the document was explained in Spanish and that Defendants were both conscious and lucid when they signed. TR April 20, 2022 at p. 82 ¶¶ 13-20, p. 85 ¶¶ 14-16, p. 86 ¶¶ 2-16.

### III.    Discussion

Defendants moved to suppress all evidence seized on May 7, 2020. Defendants argue that they were seized without reasonable suspicion and that their consent for search of the bags was coerced. Docket No. 46. Defendants question the reliability of K-9 Onyx on May 7, 2020. Docket No. 61. Defendants also argue that the confidential tip provided to law enforcement was not sufficiently reliable to provide the reasonable suspicion necessary for an investigatory stop and that their stop that day constituted a *de facto* arrest. Docket Nos. 105 and 108.

**Were Defendants seized on May 7, 2020? Yes.**

The Fourth Amendment prohibits unreasonable searches and seizures in the absence of a warrant supported by probable cause. U.S. Const. amend. IV. A Fourth Amendment seizure occurs when a police officer has restrained the liberty of a citizen through physical force or show of authority. United States v. Camacho, 661 F.3d 718, 725 (1st Cir. 2011) (quoting Terry v. Ohio, 392 U.S. 1, 19 n. 16 (1968)). "To determine whether an officer has restricted an individual's freedom of movement, courts determine the 'coercive effect of the encounter' by asking whether 'a reasonable person would feel free to decline the officers' requests or otherwise terminate the

Case 3:20-cr-00175-ADC   Document 114   Filed 07/28/22   Page 5 of 15

USA v. Colón-Torres
USA v. Ramos-Rohena
Crim. No. 20-175 (ADC)
Report and Recommendation

encounter'". United States v. Camacho, 661 F.3d at 725 (citations omitted). The Court evaluates the totality of circumstances to determine whether a seizure has occurred. Id.

According to the evidence presented during the hearing, upon arrival at Ceiba and disembarking at the terminal, Defendants (and all other passengers) were instructed by Feliciano-Mercado to stand in line in front of a back fence at the terminal and to place their bags on the floor. TR April 20, 2022 at p. 89 ¶¶ 6-19. In front of the back fence of the terminal, there were smaller removable security fences, allowing for passengers to stand in line between the two. Government Exhibit 4. The passengers were informed that their bags would be subject to a sniff by K-9 Onyx. None of the passengers were given the option of leaving or refusing the intervention prior to the K-9 being allowed to perform the sniff. TR May 6, 2020 at p. 68 ¶¶ 6-11. Although there was conflicting testimony as to whether there was an open exit in either side of where the passengers were instructed to stand in line, the truth of the matter is that it was not until after all passengers complied with the officer's instructions and the dog had sniffed all bags that the passengers could leave with their bags. Id. at p. 95 ¶¶ 1-8. There can be little question that a reasonable person under these circumstances would not feel free to leave without complying with the instructions of law enforcement. At that moment, Defendants were seized.

**Was the seizure unreasonable? No.**

The next question is whether the seizure was unreasonable. United States v. Camacho, 661 F.3d at 726. A seizure without a previous warrant is unreasonable unless it falls under one of very limited exceptions. One of such exceptions is the Terry stop. Under Terry v. Ohio, 392 U.S. 1 (1968), a warrantless stop may be reasonable if the officer suspects that the person apprehended is committing or has committed a crime. United States v. Camacho, 661 F.3d at 726; United States v. Monteiro, 447 F.3d 39, 43 (1st Cir. 2006). The inquiry is two-fold: "whether the officer's action was justified at its inception, and whether the stop was reasonably related in scope to the circumstances which justified the interference in the first place." Terry v. Ohio, 392 U.S. at 20. A reasonable suspicion is necessary. Terry v. Ohio, 392 U.S. at 28; United States v. Jones, 700 F.3d 615, 621 (1st Cir. 2012); United States v. Arnott, 758 F.3d 40, 43 (1st Cir. 2014). Reasonable suspicion is more than a mere hunch but less than probable cause. United States v. Camacho, 661 F.3d at 726 (citation omitted); United States v. Jones, 700 F.3d at 621 (reasonable suspicion is an

Case 3:20-cr-00175-ADC   Document 114   Filed 07/28/22   Page 6 of 15

USA v. Colón-Torres
USA v. Ramos-Rohena
Crim. No. 20-175 (ADC)
Report and Recommendation

intermediate standard; its assessment depends on a practical, commonsense judgment based on the particular facts of each case); United States v. Arnott, 758 F.3d at 44. It requires a "particularized and objective basis for suspecting the person stopped of criminal activity.". United States v. Camacho, 661 F.3d at 726 (citation omitted). Therefore, to justify the stop, the suspicion must be "objectively reasonable" and "grounded in specific and articulable facts". United States v. Camacho, 661 F.3d at 726 (citation omitted); Terry v. Ohio, 392 U.S. at 21-22. The Government bears the burden of showing that a reasonable suspicion justified the stop. United States v. Monteiro, 447 F.3d at 43. The Court evaluates the existence of reasonable suspicion under the totality of circumstances. United States v. Camacho, 661 F.3d at 726 (citation omitted); United States v. Jones, 700 F.3d at 621.

The suspicion for Defendants' stop stemmed from the information provided by the PRPD confidential informant to Martínez-Rodríguez on May 7, 2020. Information provided to police by a third party may create reasonable suspicion if it contains sufficient indicia of reliability. United States v. Jones, 700 F3d at 621. An informant's veracity, reliability and basis of knowledge are all highly relevant in determining the value of an informant's report. United States v. Brown, 500 F.3d 48, 54 (1st Cir. 2007) (quoting Illinois v. Gates, 462 U.S. 213, 230 (1983) (internal quotations omitted). When relying on an informant for reasonable suspicion, the Government "must provide some information from which a court can credit the informant's credibility." United States v. White, 804 F.3d 132, 136 (1st Cir. 2015) (citation omitted). The First Circuit considers the following factors: "(1) the probable veracity and basis of knowledge of the informant, (2) whether an informant's statements reflect first-hand knowledge, (3) whether some or all of the informant's factual statements were corroborated wherever reasonable and practicable, and (4) whether a law enforcement officer assessed, from his professional standpoint, experience and expertise, the probable significance of the informant's information." Id. at 137 (citations omitted). The list is non-exhaustive. United States v. Tiem Trinh, 665 F.3d 1, 10 (1st Cir 2011). "[P]ast reliability of an informant is also a significant factor permitting reliance on information that would not otherwise be sufficiently corroborated." United States v. Jones, 700 F.3d at 621-622 (citation omitted). And a tip predicting future behavior not known to the public may also be afforded

Case 3:20-cr-00175-ADC   Document 114   Filed 07/28/22   Page 7 of 15

USA v. Colón-Torres
USA v. Ramos-Rohena
Crim. No. 20-175 (ADC)
Report and Recommendation

significant weight to the extent that it demonstrates that the informant has inside information. Id. at 622. The analysis is that of the totality of circumstances. Illinois v. Gates, 462 U.S. at 238.

As elicited through testimony during the hearing, the confidential informant of the PRPD contacted Martínez-Rodríguez on May 7, 2020, to inform that there would be two males in the ferry traveling from Culebra to Ceiba who would be carrying kilos of cocaine. TR April 20, 2022 at p. 9 ¶¶ 9-25. The informant told Martínez-Rodríguez that the ferry had departed and provided a description of the two males (dark skinned, one heavy and another thin), a description of what the two males would be wearing (one a red shirt and another a gray shirt), and a description of what the two males would be carrying (one a blue and black bag and another a black bag). Id. at p. 9 ¶¶ 9-25, p. 13 ¶¶ 6-7. Admittedly, the informant did not give Martínez-Rodríguez an exact time of arrival but did inform that the ferry was on its way. Id. at p. 11 ¶¶ 6-8, p. 36 at ¶¶ 3-5. Martínez-Rodríguez testified that he believed the informant to be reliable, that he had known the informant for approximately five (5) months, and that the informant had provided information in three (3) previous occasions which had led to seizures in the same ferry terminal. Id. at p. 10 ¶¶ 1-7, p. 50 ¶¶ 4-24, p. 51 ¶¶ 11-13, p. 56 ¶¶ 12-24, p. 57 ¶¶ 6-9. Martínez-Rodríguez testified that he verbally relayed the information to Feliciano-Mercado and Esteves-Díaz. Id. at p. 11 ¶¶ 10-22. However, Esteves-Díaz's testimony was that the description of the two males provided by Martínez-Rodríguez to him was limited to two individuals of brown skin, one with gray pants. TR May 6, 2022 at p. 64 ¶¶ 5-24. The defense challenges the existence of reasonable suspicion based on the limited information provided to Esteves-Díaz (rather than the full description provided to Feliciano-Mercado), on the officers' failure to prepare a written report of the information, and on Feliciano-Mercado's lack of credibility. The Court finds that the informant's tip had sufficient indicia of reliability to justify the officers' reasonable suspicion on the day of the intervention.

While Martínez-Rodríguez did not inquire as to the informant's basis of knowledge, the informant's tip does reflect some firsthand knowledge. The informant did know that the ferry at issue had already departed Culebra and was on its way to Ceiba. The informant also knew that two (2) males with dark skin would be carrying kilos of cocaine. See Alabama v. White, 496 U.S. 325 (1990) ("because only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to also

Case 3:20-cr-00175-ADC   Document 114   Filed 07/28/22   Page 8 of 15

USA v. Colón-Torres
USA v. Ramos-Rohena
Crim. No. 20-175 (ADC)
Report and Recommendation

have access to reliable information about that individual's illegal activities."). And Martínez-Rodríguez testified that based on his experience he expected the informant's tip to lead to a seizure of narcotics. He also testified that he knew the informant for five (5) months prior and that this informant had provided information leading to seizures at the same ferry terminal on three (3) previous occasions. See Adams v. Williams, 407 U.S. 143, 146-148 (1972) (informant known personally to the officer, that had provided information in the past, and that could be held accountable for providing false information is reliable). These factors indicate to the Court that the informant's tip in this case had sufficient indicia of reliability to create a reasonable suspicion. See e.g., United States v. Alston, 112 F.3d 32, 33-34 (1st Cir 1997) (reasonable suspicion found when informant had provided reliable information in the past); United States v. Brown, 500 F.3d 48, 55-56 (1st Cir. 2007) (reliability established by accountability of informant, and past accurate information, and that the informant provided information regarding the right quantity and types of drugs, transporter method of travel, date, time and place of travel, physical description of suspect and race); United States v. Taylor, 162 F.3d 12, 18-20 (1st Cir. 1998) (known informant who had provided reliable tip in the past, reasonable suspicion). Importantly, Feliciano-Mercado corroborated the tip prior to the intervention. He testified that, given the description of the individuals that was provided by Martínez-Rodríguez, he identified the individuals "at the outset" upon them disembarking the ferry. TR April 28, 2022 at p. 37 ¶¶ 16-23. See Adams v. Williams, 407 U.S. at 146-148 (information immediately verifiable at the scene may be reliable); United States v. Alston, 112 F.3d at 33-34 (reasonable suspicion found when police were able to confirm the informant's description of the defendant at the location given by the informant).

That the information provided to Esteves-Díaz may have been limited (two (2) males with brown skin and one with gray pants) and did not include the level of specificity of the information provided to Feliciano-Mercado (see TR of May 6, 2022 at p. 64 ¶¶ 4-24), gives the Court pause but not to the level of distrust of the testimonies of Martínez-Rodríguez and Feliciano-Mercado. Note that Esteves-Díaz was assisting in the intervention and not in charge. Id. at p. 82 ¶¶ 10-14, p. 89 ¶¶ 12-13. Feliciano-Mercado was the agent in charge at that time. Id. And although limited, the information provided to Esteves-Díaz was not inconsistent with that provided to Feliciano-Mercado. Further, as testified by Martínez-Rodríguez, the information was provided by the

8

USA v. Colón-Torres
USA v. Ramos-Rohena
Crim. No. 20-175 (ADC)
Report and Recommendation

informant on the same day of the intervention, when the ferry had already departed from Culebra. It was for this reason that Martínez-Rodríguez, who was on vacation, after calling Esteves-Díaz and learning that he was farther from the terminal, proceeded to call Feliciano-Mercado who was closer to the terminal. The circumstances and speed in which the information had to be relayed could reasonably account for the omission in the information provided to Esteves-Díaz. This omission in and of itself is insufficient for the Court to find that the information was not reliable. See W.R. LaFave, 4 Search and Seizure at § 9.5(i) (5th ed.) ("It must be recognized that stoppings for investigations are not all of one kind and that in some instances the need for immediate action may be so great that substantial doubts about reliability of the informant or his information cannot be permitted to stand in the way of prompt police action.").

The defense takes issue with the fact that neither Martínez-Rodríguez or Feliciano-Mercado prepared a report containing the information provided by the informant. And that the only report was prepared by Esteves-Díaz several days after the intervention (with the limited description of the suspects, as discussed above).[1] Surely, it would have been helpful for the Court to have a written description of the informant's tip prepared contemporaneous with the day of the intervention. And it appears that such a written report may have been required by law enforcement. However, as discussed above, there were time constraints (information was provided once the ferry had departed from Culebra) and circumstances (officer Martínez-Rodríguez was on vacation) that can explain the failure to prepare a written report that day. The testimonies of Martínez-Rodríguez and Feliciano-Mercado were consistent in the details and the descriptions provided by the informant. The foregoing, and the other factors discussed above, provide the Court with enough to find that the tip had sufficient indicia of reliability at the time of the intervention.

In sum, the Government established that the information was received by law enforcement from a known informant who had provided reliable information on three (3) prior occasions, the information contained details of the suspects' skin tone and size, their clothing, a description of their bags, the type of narcotics that could be found in the bags, the mode of transportation, place of departure and arrival, and approximate time of arrival. Furthermore, Feliciano-Mercado was able to corroborate the information provided "at the outset" prior to the intervention. Given the

---

[1] The defense did not introduce Esteves-Díaz's report in evidence.

Case 3:20-cr-00175-ADC    Document 114    Filed 07/28/22    Page 10 of 15

**USA v. Colón-Torres**
**USA v. Ramos-Rohena**
**Crim. No. 20-175 (ADC)**
**Report and Recommendation**

totality of the circumstances, the Court finds that the confidential tip was sufficiently reliable to be the basis for the officers' reasonable suspicion on May 7, 2020.

But the inquiry under Terry does not end with a finding of reasonable suspicion. For the warrantless stop to be valid under Terry, "the scope of the detention must be carefully tailored to its underlying justification." Florida v. Royer, 460 U.S. 491, 500 (1983) (citations omitted). To find that it was, the stop must have been "temporary and last no longer than necessary to effectuate the purpose of the stop", and "the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." Id. 460 U.S. at 497 (citations omitted). The Government bears the burden. Id.

The defense posits that the Government has not met this burden and that, rather than being stopped under Terry, Defendants were subject to a *de facto* arrest without probable cause. The Court disagrees. As shown in the video at Government Exhibit 10, the entire intervention (from the time in which Defendants disembarked the ferry until they were detained) lasted approximately seven (7) minutes. Defendant Colón-Torres was stopped for approximately five (5) minutes before his arrest. Defendant Ramos-Rohena was stopped for approximately six (6) minutes before his arrest. The stop was not unreasonably long. See United States v. Nieves, 256 F.Supp.3d 133, 137 (D.P.R. 2017) (ten-minute delay for dog to arrive did not turn stop unreasonable.); see also United States v. García-Sanjurjo, 2021 WL 4839905 * 9 (D.P.R.) (citing string of First Circuit cases for the same proposition). Furthermore, as can be seen in the video, all 17 passengers were stopped, and none were restrained. Only two law enforcement officers participated in the intervention prior to arrest; one of which was wearing civilian clothes. Despite being armed, neither of the officers drew their weapons during the intervention. The Court thus finds that the intervention at issue does not contain the characteristics of an arrest. See United States v. Jones, 700 F.3d at 625; United States v. Taylor, 162 F.3d at 21; see e.g., United States v. García-Sanjurjo, 2021 WL 4839905 at * 9 (doubting that a reasonable person subject to a large inspection involving all passengers of a ferry would have understood everyone to be under arrest).

**Was K-9 Onyx reliable? Yes.**

The defense questions the reliability of the canine alert. The law is clear that the use of a well-trained narcotics detection dog that reveals only the location of controlled substances during

Case 3:20-cr-00175-ADC   Document 114   Filed 07/28/22   Page 11 of 15

USA v. Colón-Torres
USA v. Ramos-Rohena
Crim. No. 20-175 (ADC)
Report and Recommendation

a lawful traffic stop does not implicate legitimate privacy interests. Illinois v. Caballes, 543 U.S. 405, 409 (2005)(internal citation and quotations omitted). Indeed, "a narcotics-detection dog sniff on the exterior of a person's car while that person is lawfully detained is not a search within the meaning of the Fourth Amendment." United States v. Centeno-González, 177 F.Supp.3d 721, 730 (D.P.R. 2016) (discussing Illinois v. Caballes, 543 U.S. at 409). Neither is a narcotics-detection dog sniff performed on luggage during a stop. Id. at 731; United States v. Place, 462 U.S. 696, 707 (1983). Thus, the question here is not whether K-9 Onyx's sniff of the bags was a search but whether his alert to controlled substances in Defendants' bags was reasonably reliable and could contribute to the officers' belief that controlled substances were illegally being transported by Defendants.

Esteves-Díaz, the handler of K-9 Onyx, has been a certified K-9 handler since July 21, 2017; having completed 200 hours of training in controlled substances detection. TR May 6, 2022 at p. 46 ¶¶ 4-5; Government Exhibits 11-12. The Government presented a certificate from Florida International University, which established that, as of November 14, 2018, Esteves-Díaz and K-9 Onyx had completed the narcotic detection proficiency exams of the US K-9 Academy & Police Dog Training Center. Government Exhibit 13. The Government also presented a training certificate for Esteves-Díaz and K-9 Onyx valid from July 23, 2018 through July 23, 2019. Government Exhibit 14. The Government presented a letter dated August 19, 2019, which states that, as of that date, Esteves-Díaz was certified as the handler for K-9 Onyx. Government Exhibit 15. Documents titled Evaluation Sheets for April 29, 2020 and May 10, 2020, which Esteves-Díaz explained were evidence of K-9 Onyx's monthly evaluations, show that, on those dates, K-9 Onyx identified the scents of controlled substances (including cocaine) without difficulty. Government Exhibits 16-17.

The defense has argued that, because the Government did not present a formal certificate for the year 2019-2020, K-9 Onyx was not certified on the day of the intervention and his sniff was unreliable. The Court disagrees. First, from the monthly evaluation sheets issued days before and after the intervention we know that K-9 Onyx could identify the scent of cocaine without difficulty. Government Exhibits 16-17. Second, although the August 19, 2019 letter is not in the form of a certificate and does not contain an expiration date, it does contain essentially the same

Case 3:20-cr-00175-ADC    Document 114    Filed 07/28/22    Page 12 of 15

USA v. Colón-Torres
USA v. Ramos-Rohena
Crim. No. 20-175 (ADC)
Report and Recommendation

language that was included in Government Exhibit 12; the certificate for the year 2017. Id. Third, as repeatedly testified by Esteves-Díaz, he understands the August 19, 2019 letter to be evidence of both his and K-9 Onyx's certification for the year 2019-2020. TR of May 6, 2022 at p. 56 ¶¶ 1-4, p. 91 ¶¶ 18-19. And, in any event, the case law is clear that there are no specific requirements to rely on a dog alert for probable cause. The U.S. Supreme Court in Florida v. Harris, 568 U.S. 237, 248 (2013), expressly rejected the premise that a drug-detection dog's reliability depends on "an inflexible checklist of state requirements". In Harris, the U.S. Supreme Court held that the absence of a formal certification is not in and of itself an issue and that "[i]f the State has produced proof from controlled settings that a dog performs reliably in detecting drugs, and the defendant has not contested that showing, then the court should find probable cause". Id. The Government here has submitted sufficient proof that K-9 Onyx performed reliably in the detection of cocaine both before and after the day of the intervention.

The defense has also argued that, prior to alerting to the bags of the Defendants, K-9 Onyx alerted to the bag of another passenger and no controlled substances were found. TR of May 6, 2022 at p. 15 ¶¶ 1-15. However, false positives do not necessarily taint a dog's reliability. Florida v. Harris, 568 U.S. at 245-246, 259. The defense also relied on the testimony of Defendant Ramos-Rohena to question the K-9's reliability. Defendant Ramos-Rohena testified that K-9 Onyx did not alert to his bag in the first three passes. That it was not until the fourth pass and after his handler touched the bag, that K-9 Onyx alerted to his bag. TR of May 6, 2022 at p. 114 ¶¶ 22-25, p. 115 ¶¶ 1-2. But Defendant Ramos-Rohena's testimony is defeated by the video recording of the intervention. Government Exhibit 10. No such four (4) passes can be observed in the video. See also TR of May 6, 2022 at p. 138 ¶¶ 20-22. Indeed, contrary to Defendant Ramos-Rohena's testimony, K-9 Onyx was initially walked in front of all passengers to reach the beginning of the line of passengers. Government Exhibit 10. Both Defendants were standing in the middle of the line. K-9 Onyx alerted to Defendant Colón-Torres on the first pass; less than one (1) minute after the handler began his initial walk towards the beginning of the line. The handler then waited in front of Defendant Colón-Torres and walked again to the beginning of the line (without passing Defendant Ramos-Rohena who was at the opposite side of Defendant Colón-Torres). The handler then returned to Defendant Colón-Torres until Feliciano-Mercado joined him. It was right

Case 3:20-cr-00175-ADC    Document 114    Filed 07/28/22    Page 13 of 15

USA v. Colón-Torres
USA v. Ramos-Rohena
Crim. No. 20-175 (ADC)
Report and Recommendation

afterwards that K-9 Onyx alerted to Defendant Ramos-Rohena's bag; a little over two (2) minutes after the handler began his initial walk towards the beginning of the line of passengers. See Government Exhibit 10.

**Was the consent to search voluntary? Yes.**

The Government bears the burden of proving by a preponderance of the evidence that a defendant's consent to search was freely and voluntarily granted. United States v. Vanvliet, 542 F.3d 259, 264 (1st Cir. 2008) (citation omitted). A consent is voluntary if it is free and unconstrained. United States v. García-Sanjurjo, 2021 WL 4839905 at *6 (citation omitted). It is not voluntary if "granted only in submission to a claim of lawful authority.". Id. (citation omitted); Florida v. Royer, 460 U.S. 491, 497 (1983) (citations omitted). Voluntariness is a question of fact. United States v. Vanvliet, 542 F.3d at 264 (citation omitted). The Court must assess the totality of the circumstances. Id. (citation omitted). Various factors may be considered in assessing voluntariness for consent to search. These include the consenting party's age, education, experience, and intelligence, the consenting party's knowledge of the right to refuse consent, the consenting party's possibly vulnerable subjective state, and evidence of inherent coercive tactics, either in police questioning or in the environment in which the questioning took place. United States v. Twomey, 884 F.2d 46, 51 (1st Cir. 1989) (quotations and citations omitted); United States v. García-Sanjurjo, 2021 WL 4839905 at *6 (citation omitted).

Defendants contend that their consent to search the bags was not voluntary because they felt they had no choice but to consent. However, this argument runs counter to the testimonial and documentary evidence presented during the hearing. According to the testimonial evidence at the hearing, once the K-9 alerted to the bag of each of the Defendants, Feliciano-Mercado approached them and informed them that the K-9 had alerted to their bags. Both Defendants denied that their bags contained controlled substances but proceeded to bend over and open their respective bags. This testimony was corroborated by Esteves-Díaz (TR of May 6, 2022 at p. 102 ¶¶ 3-20), and by the video recording, where one can clearly observe when each of the Defendants bends over to open their bag and Feliciano-Mercado is standing up watching from above. Government Exhibit 10. Defendant Ramos-Rohena so admitted during his cross-examination. TR May 6, 2022 at p. 143 ¶¶ 6-8. Not knowing or not being advised that a search can be refused is insufficient to find

Case 3:20-cr-00175-ADC    Document 114    Filed 07/28/22    Page 14 of 15

USA v. Colón-Torres
USA v. Ramos-Rohena
Crim. No. 20-175 (ADC)
Report and Recommendation

involuntariness or coercion. See U.S. v. Forbes, 181 F.3d 1, 5-6 (1st Cir. 1999); United States v. Jones, 523 F.3d 31, 38 (1st Cir. 2008). And, as established by the testimonial evidence, neither of the officers drew or brandished their weapon in this process. There is also no evidence that either of the Defendants withdrew their consent at any time. Indeed, once Defendants were placed under arrest, both Defendants signed a document titled Consent to Search. Government Exhibits 5-6. Feliciano-Mercado testified that the document was read in Spanish to each of the Defendants and that they both appeared lucid and coherent at signature. TR April 20, 2022 at p. 82 ¶¶ 13-20, p. 85 ¶¶ 14-16, p. 86 ¶¶ 2-16. The documents informed Defendants that they could refuse the consent or stop the same before completion, and that the consent for search was given freely, voluntarily, without promises, threats or coercion, or force of any kind whatsoever, and that any evidence of crime found could be seized and used against them in a court of law. Government Exhibits 5-6. The evidence sustains a finding that the consent given by Defendants was free and voluntary, not a product of coercion.

**IV.    Conclusion**

Defendants were seized on May 7, 2020. The seizure was nonetheless reasonable given the reasonable suspicion of the officers and that its execution was narrowly tailored in scope under the circumstances. The Government established that the K-9 used for drug detection was reliable and that the Defendants voluntarily consented to the search of their bags that day. The credible facts of this case warrant a finding that the motion to suppress should be **DENIED**.[2]

**IT IS SO RECOMMENDED.**

This Report and Recommendation is issued pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be

---

[2] In its opposition to the motion to suppress and during the hearing, the Government argued that Defendants could be searched as authorized by a sign purportedly posted in the Culebra and Ceiba terminals informing passengers that upon boarding the ferry they were agreeing to a search and inspection of their person, equipment, personal effects or vehicle. Docket No. 53. However, aside from introducing a photograph of the sign as one of the exhibits at the hearing (Government Exhibit 1) and eliciting some testimony regarding the posting of the sign at the terminal, the Government failed to develop the record. Indeed, in its post-hearing brief at Docket No. 107, the Government merely copied and pasted arguments from another case not in any way related to this one. See Docket No. 107 at p. 14 (see references to TFO Ruisanchez and a search held on August 24, 2019). But, in any event, given the Court's conclusions above, a recommendation on this matter is unnecessary.

Case 3:20-cr-00175-ADC   Document 114   Filed 07/28/22   Page 15 of 15

**USA v. Colón-Torres**
**USA v. Ramos-Rohena**
**Crim. No. 20-175 (ADC)**
**Report and Recommendation**

filed within fourteen (14) days of its receipt. Failure to file timely and specific objections to the Report and Recommendation is a waiver of the right to review by the District Judge and of appellate review. Thomas v. Arn, 474 U.S. 140, 154-155 (1985); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992).

In San Juan, Puerto Rico, this 28th day of July 2022.

s/Giselle López-Soler
GISELLE LÓPEZ-SOLER
United States Magistrate Judge