THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.

[1] SIXTO J COLON-TORRES,
[2] FELIX A RAMOS-ROHENA,

    Defendants.

Crim. No. 20-175 (ADC)

## OPINION AND ORDER

Pending before the Court are co-defendant Sixto J. Colón-Torres's ("Colón-Torres") objections, **ECF No. 121**, to the Report and Recommendation ("R&R") issued by United States Magistrate Judge Giselle López-Soler ("Magistrate Judge"), **ECF No. 114**, and co-defendant Félix Ramos-Rohena's ("Ramos-Rohena") motion for joinder at **ECF No. 122**.

For the following reasons, defendants' motions at **ECF Nos. 121, 122** are **DENIED**. After a careful review of the record, the suppression hearing's transcripts, the evidence and the filings in this case, the Court hereby **ADOPTS** the R&R. **ECF No. 114**. Accordingly, the motions to suppress at **ECF Nos. 46, 61** are **DENIED**.

I.    **Procedural Background**

A Grand Jury returned an indictment charging defendants with conspiracy to possess with intent to distribute 5 or more kilograms of cocaine (Count One) and possession with intent

to distribute the same amounts of cocaine (Count Two) in violation of 21 U.S.C. Sec. 841(a)(1), (b)(1)(A)(ii) and 846. **ECF No. 17.**

Defendants moved separately to suppress the government's evidence on Fourth Amendment grounds. *See* **ECF Nos. 46, 61**. U.S. CONST. amend. IV. Specifically, on October 1, 2020, Ramos-Rohena, through appointed counsel, filed a motion to suppress accompanied by several documents, including a declaration under penalty of perjury in support. **ECF Nos. 46, 46-1.** The government responded and Ramos-Rohena replied. **ECF Nos. 46, 46-1, 53, 54.**

On December 11, 2020, Colón-Torres filed his motion to supress. **ECF No. 61**. Notably, unlike Ramos-Rohena's motion, Colón-Torres's motion did not include any affidavit or declaration in support.[1] *See id*. Colón-Torres simply stated he "joined" Ramos-Rohena's motion to suppress and requested a hearing to "determine the reliability of the K-9 alert." *Id.*, at 1.

The Court referred the motions to a United States Magistrate Judge for an evidentiary hearing and the issuance of a report and recommendation. **ECF No. 70**. The evidentiary hearing spanned for three days. The government called three law enforcement agents to the stand and introduced a video recording and several documents into evidence. On the defense's side, only co-defendant Ramos-Rohena testified. After receiving post-hearing briefs from the parties, on July 28, 2022, the Magistrate Judge entered her R&R. **ECF No. 114.** The Magistrate Judge

---

[1] The lack of a declaration from Colón-Torres becomes more relevant due to the fact that Colón-Torres did not testify in the suppression hearing. Therefore, as discussed elsewhere in this Opinion and Order, the Court has no statement, declaration, evidence or filing from Colón-Torres in support of his Fourth Amendment challenge.

recommends that the Court deny the motions to supress. *Id.* Pursuant to 28 U.S.C.A. § 636; Fed. R. Civ. P. 72; Local Civil Rule 72(d), objections to the R&R were due on August 11, 2022.

Unlike Colón-Torres, co-defendant Ramos-Rohena did not file an objection to the R&R before August 11, 2022. Nor did he move for an extension of time to do so. Instead, on September 26, 2022, co-defendant Ramos-Rohena filed a two-line motion simply "join[ing]" Colón-Torres's objections. **ECF No. 123** at 1.

The Court will address each filing and the arguments therein in turn.

## II. Discussion

On May 7, 2020, defendants and other passengers traveled on a boat ("Ferry Coastal Explorer") from Culebra, Puerto Rico to Ceiba, Puerto Rico. **ECF No. 61** at 2. Each defendant traveled with a bag. **ECF No. 61** at 2, 6. Acting on a tip provided by a confidential informant,[2] upon arrival to Ceiba, Puerto Rico Police Department Agent Ishmael Feliciano-Mercado ("Agent Feliciano-Mercado") met the ferry upon its arrival to Ceiba and instructed all passengers with bags to line up in an area in front of the pier. *Id.*, at 2. Federal Bureau of Investigations Agent Christopher Esteves-Díaz ("Agent Esteves-Díaz"), handler of K-9 officer Onyx ("K-9" or "Onyx"), walked Onyx along the bags. *Id.* Upon reaching Colón-Torres's bag, Onyx gave a positive signal alerting to the presence of controlled substances on Colón-Torres's bag. Colón-Torres

---

[2] The tip was received by Agent Martínez-Rodríguez who was on leave. Agent Martínez-Rodríguez immediately forwarded the information received to Agent Feliciano-Mercado and Esteves-Díaz. Reportedly, the informant had provided reliable information regarding drug smuggling on the same ferry in three prior occasions.

voluntarily opened his bag.[3] Controlled substances were found in his bag. *Id.* Onyx then alerted to Ramos-Rohena's bag, which Ramos-Rohena opened. Controlled substances were also found in his bag. *Id.*

### A. Co-defendant Ramos-Rohena

The R&R specifically warned that any objections must "be specific and [] filed within fourteen (14) days… Failure to file timely and specific objections to the [R&R] is a waiver of the right to review by the District Judge and of appellate review." **ECF No. 114** at 14-15. Yet, co-defendant Ramos-Rohena failed to log objections to the R&R within the statutory term. He also failed to move for an extension of time. Moreover, even if he had believed in good faith that the Court's granting of an extension of time to Colón-Torres applied to him (it did not), Ramos-Rohena failed to log objections within said term. Instead, a month and a half after his 14-days term expired, Ramos-Rohena filed a one-page motion for joinder on Colón-Torres's objections. This skeletal, two-sentence filing at **ECF No. 122** made no showing of good cause for the Court to accept his extremely late filing.

It is black letter law that "[f]ailure to raise objections to the [R&R] waives the party's right to review in the district court…". *Davet v. Maccarone*, 973 F.2d 22, 31 (1st Cir. 1992)(citing *Thomas v. Arn*, 474 U.S. 140 (1985)). First Circuit "procedural rules and case law are crystal clear that when… a party fails to file an objection to an R&R, the party has waived any review… ." *United*

---

[3] Defendants did not raise an objection or otherwise challenge their consent to the search or the voluntariness of such consent.

States v. Maldonado-Peña, 4 F.4th 1, 20 (1st Cir. 2021)(citing *United States v. Díaz-Rosado*, 857 F.3d 89, 94 (1st Cir. 2017).

Because Ramos-Rohena failed to file a timely objection (and by quite a wide margin), "the district court ha[s] [the] right to assume that [he] agreed to the magistrate's recommendation."*Álamo Rodríguez v. Pfizer Pharmaceuticals, Inc.*, 286 F.Supp.2d 144, 146 (D.P.R., 2003); *see Templeman v. Chris Craft Corp.*, 770 F.2d 245, 247 (1st Cir. 1985), *cert. denied*, 474 U.S. 1021 (1985). The Court thus **DENIES** Ramos-Rohena's filing at **ECF No. 122** as untimely.

Even if Ramos-Rohena's motion was not denied on the above cited grounds, his filing also fails because it is not specific. As underscored before, he simply moved for "joinder." *De novo* review only applies to "those portions of the report or specified proposed findings or recommendations to which **specific objection is made**." *Sylva v. Culebra Dive Shop*, 389 F.Supp.2d 189, 191–92 (D.P.R. 2005) (citing *United States v. Raddatz*, 447 U.S. 667, 673 (1980)(emphasis added)).

Moreover, his attempt to join his co-defendants' Fourth Amendment request for relief is impermissible. Ramos-Rohena cannot simply move for "joinder" on co-defendant Colón-Torres's objections because Fourth Amendment challenges cannot be raised vicariously. *Alderman v. U.S.*, 394 U.S. 165, 174 (1969)("Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted.") Here, both defendants moved to suppress the evidence the government found in **each** of their bags during separate searches. Under the Fourth Amendment, each co-defendant must move to protect their rights

individually. Therefore, Colón-Torres's Fourth Amendment claims cannot be read as a challenge to the search of Ramos-Rohena's bag, and *vice versa*. To be sure, "[t]here is no necessity to exclude evidence against one defendant in order to protect the rights of another." *Alderman v. U.S.*, 394 U.S. at 174.

Accordingly, Ramos-Rohena's filing at **ECF No. 122 is DENIED** given his failure to file specific objections to the R&R. The Court now turns to co-defendant Colón-Torres's objections.

**B.    Co-defendant Colón-Torres**

**(i)    Standing**

In essence, Colón-Torres filed three objections. **ECF No. 121**. However, before getting there, Colón-Torres must first establish a reasonable expectation of privacy. *U.S. v. Lipscomb*, 539 F.3d 32, 35 (1st Cir. 2008)("[b]efore reaching the merits of a suppression challenge, the defendant carries the burden of establishing that he had a reasonable expectation of privacy...").

Unlike his co-defendant Ramos-Rohena's motion to suppress, Colón-Torres did not submit an affidavit or other declaration to establish an expectation of privacy over the place or items in question. Nor did he testify or submit any document during the evidentiary hearing.[4] Instead, through counsel, he simply indicated in his motion to suppress (without an affidavit or declaration in support) that he had an "expectation of privacy in the place searched and the items seized" because he "kept his personal belongings" in the bag. **ECF No. 61** at 6.

---

[4] Colón-Torres post-hearing brief (even though not incorporated by reference in the objections) also fails to establish standing. **ECF No. 108**.

For decades, First Circuit precedent has maintained that "failure to present evidence with respect to such an expectation [of privacy] prevents a defendant from making a claim for suppression under the Fourth Amendment." *U.S. v. Samboy*, 433 F.3d 154, 162 (1st Cir. 2005)(*citing United States v. Lewis*, 40 F.3d 1325, 1333 (1st Cir. 1994)). Thus, Colón-Torres's objections are fatally wounded from the outset.

Even if the unsupported standing assertions in the motion to suppress sufficed for Fourth Amendment purposes, which this Court is not willing to accept, Colón-Torres's objections to the R&R definitely do not.

### (ii) No right to a *de novo* hearing

Colón-Torres requested in general terms a *de novo* hearing. Contrary to his unsupported request, he does not have a right to an automatic *de novo* hearing.

The U.S. Magistrate Judges system was established as the "first echelon of the Federal judiciary" and an "effective component of a modern scheme of justice... ." H.R. REP. No. 1629, 90th Cong., 2d Sess. 11 (1968), reprinted in 3 1968 U.S.C.C.A.N. 4252. Accordingly, it is well settled in this District that courts "generally will not disturb the credibility determinations of a magistrate judge[,]" specially when, as in this case, the record supports such determinations. *United States v. López-Ortiz*, 648 F. Supp.2d 241, 249 (D.P.R. 2009); *see generally, United States v. Raddatz*, 447 U.S. 667 (1980). After all, "[i]f the Magistrate system is to be effective, and if profligate wasting of judicial resources is to be avoided, the district court should be spared the chore of traversing ground already plowed by the Magistrate [Judge]" unless the Court finds it

necessary to do so. *See González-Ramos v. Empresas Berrios, Inc.,* 360 F. Supp.2d 373, 376 (D.P.R. 2005) (*citing Sackall v. Heckler,* 104 F.R.D. 401, 402-03 (D.R.I. 1984)). "[A] district judge need not hear the live testimony of a witness in order to accept the credibility determination of a magistrate judge." *Hernández-Rodríguez,* 443 F.3d at 147–48 (*citing Raddatz,* 447 U.S. at 680-81 (1980)). "[T]o require the district court to conduct a second evidentiary hearing whenever either party objects to the magistrate judge's credibility finding would frustrate the plain objective of Congress [in 28 U.S.C. §636(b)(1)] to alleviate the increasing congestion in district courts." *United States v. Cadieux,* 295 F. Supp.2d 133, 135 (D. Me. 2004).

Because Colón-Torres did not make a showing of, even under the most relaxed standards, there is no reason in this case to question the Magistrate Judge's assessment of credibility. After all, the Magistrate Judge's "findings" are based, *inter alia,* on the "variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 575 (1985). The Court will therefore not conduct a de novo hearing.

### (iii) First objection: credibility of Agent Feliciano-Mercado

Colón-Torres first objects to the "R&R's decision to credit the testimony offered by [Agent Feliciano-Mercado]." *Id.,* at 2. This objection is based on three simple and (being generous) semi-developed grounds; specifically, that Agent Feliciano-Mercado: (1) testified "with impressive detail" only during direct examination about an anonymous tip; (2 went back and forth when asked whether he "authored a report" of the incident; and (3) that Agent Feliciano-Mercado

"refused to confirm that passengers [of the ferry] were not free to leave." *Id.*, at 3. Based solely on these three alleged inconsistencies, Colón-Torres asks the Court to disregard the Magistrate Judge's findings and to deem Agent Feliciano-Mercado's testimony not credible. *Id.*

Colón-Torres cited no authority or caselaw in support of his objection. Moreover, the argument is unavailing from a substantiative point of view. Colón-Torres's objection is not based on competing testimonies: as noted in the discussion above, Colón-Torres did not testify during the evidentiary hearing, nor did he submit an affidavit in support of his version of the facts. Instead, his challenge only questions the credibility of Agent Feliciano-Mercado and only based on the alleged inconsistencies in his testimony as outlined above.

Yet, under First Circuit precedent, "absent objective evidence that contradicts a witness's story[,]" which is not the case here, "or a situation where the story itself is so internally inconsistent or implausible that no reasonable factfinder would credit it[,]" there is no reason to undermine the Magistrate Judge's credibility determination. *United States v. Sierra-Ayala*, 39 F.4th 1, 13 (1st Cir. 2022)(quoting *United States v. Guzmán-Batista*, 783 F.3d 930, 937 (1st Cir. 2015)). The objection fails to meet this standard.

But even if the Court decided to entertain the claim, the truth is that these three aspects of Agent Feliciano-Mercado's testimony are, at best, only tangential. Indeed, none of these matters touch upon any material aspect of the protections of the Fourth Amendment. To wit, none of these issues individually or considered collectively make the search unlawful *per se* under the Fourth Amendment. Importantly, the two agents that participated in the arrest

testified that Colón-Torres provided his consent and voluntarily opened his bag. The unchallenged portion of Agent Feliciano-Mercado's testimony states:

> A. I indicated to him that the K-9 unit of my fellow officer had identified his bag as containing something illegal inside...
> A. [Colón-Torres] indicated to me that he was not carrying anything illegal and that he could open it for me so I could see...
> A. [Colón-Torres] bent and opened his own bag...
> A. [Colón-Torres] opened the bag and he — there were some clothes that were on the top on the left. So, when he moved those first items of clothes, I was able to observe out of my own experience that there were some kilos of cocaine.

**ECF No. 103** at 77. Moreover, Agent Esteves-Díaz (whose testimony is not challenged in the objections to the R&R) corroborated Agent Feliciano-Mercado's testimony:

> Q. Did you observe Agent Feliciano[-Mercado] request permission to search the bag?
> A. Correct.
> Q. How did Mr. Sixto Colón[-Torres] respond to Agent Feliciano[-Mercado]'s question or his request to search the bag?
> A. He said, yes, and he himself bent down together with the Agent.

Thus, the challenged testimony was corroborated by other government's witnesses, as well as the evidence, which includes a video recording. *See inter alia* Government's Exhibit 10. Importantly, in his objections, Colón-Torres did not challenge the credibility of the other agents who testified at the evidentiary hearing or the authenticity of the video recordings. The other two agents, including Agent Martínez-Rodriguez (who originally received the tip from the confidential informant), corroborated Agent Feliciano-Mercado's testimony.[5] *See inter alia* **ECF**

---

[5] The fact that Colón-Torres did not raise an objection as to the credibility of Agent Martínez-Rodríguez's testimony speaks volumes, considering the wide latitude given to defendants' counsels regarding the subject matter of their questions, which extended to questions as irrelevant as ["What did you eat?" and "What was the [type of the]

No. 103 at 9, 11, 13, 34, 38, 52-54. In fact, the Magistrate Judge determined that the "testimonies of Martínez-Rodríguez and Feliciano-Mercado were **consistent** in the details and the descriptions." **ECF No. 114** at 9 (emphasis added).

Therein lies yet another lethal flaw in the objection, for when a "finding is based on [a judge's] decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985).

Even if the Court examined the merits of the arguments, the Court would first note that providing too much detail cannot, in and of itself, be a ground to question the Magistrate Judge's credibility assessment. The same goes for Colón-Torres's undeveloped complaints about Agent Colón-Mercado's alleged "uncertain testimony regarding whether he generated any reports[.]" **ECF No. 108** at 2. Whether Agent Feliciano-Mercado did or did not recall if he prepared a report, or if it was simply the witnesses' failure to understand defense counsel's questions,[6] it remains a fact that Agent Feliciano-Mercado clearly remembered the events that led to the defendants'

---

calzone? A. Pepperoni[,]" "Did you relay [the confidential information] to the agents while you were waiting for your calzone?"] **ECF No. 103** at 43, 52.

[6] The Magistrate Judge wisely suggested "to show him what you have and ask him whether there's anything else other than that document and what's the problem with that." **ECF No. 103** at 107. However, the defense did not agree with the Magistrate Judge's proposal. Instead, the defense "propose[d] [] the following: Twice I asked him, 'did you handed that document?... my suggestion would be that he review what he has handed to the government and to verify if everything that he handed to them and if that report or the incident report is included in those documents because he doesn't remember. Then I can't go on and continue with my cross examination because he doesn't remember if he handed it or not." *Id.*, at 107-108.

arrest and testified about it in open court. In fact, as conceded by Colón-Torres in his first argument, Agent Feliciano-Mercado had a very good recollection of the events relevant to the suppression request. After hearing all the witnesses, reviewing the evidence, and studying the parties' post-hearing briefs, the Magistrate Judge found Feliciano-Mercado's testimony credible. **ECF No. 118** at 8.

Likewise, after a careful study of the full record and the transcripts, Colón-Torres has failed to convince the Court of the need to "hear the live testimony of [Agent Feliciano-Mercado] in order to accept the credibility determination of [the] magistrate judge." *Hernández-Rodríguez*, 443 F.3d at 147–48 (*citing Raddatz*, 447 U.S. at 680-81 (1980)).

Colón-Torres's last attempt at Agent Feliciano-Mercado's credibility also misses the mark. In his words, the "R&R [concludes that] '[t]here can be little question that a reasonable person under these circumstances would not feel free to leave without complying with the instructions of law enforcement[,]' yet [Agent Feliciano-Mercado] refused to acknowledge this point." **ECF No. 121** at 3. First of all, the Magistrate Judge's conclusion is hardly a factual finding. Second, the Magistrate Judge arrived at that conclusion only after hearing the testimony. Therefore, what Agent Feliciano-Mercado thought at the time of his testimony cannot be called into questioned with a conclusion drawn by a third party afterwards. But even then, his understanding of the situation (that the passengers were free to leave) was also the impression of the other agent that participated in the arrest. Asked by the defense whether all passengers

were detained, Agent Esteves-Díaz, clearly testified that "What we did was to check everyone's luggage. No one was detained at that time." **ECF No 113** at 67.[7]

Therefore, there is absolutely no ground for the Court to question the Magistrate Judge's credibility assessments, especially when, as here, there are additional witnesses corroborating the challenged portion of Agent Feliciano-Mercado's testimony.

Again, when the Magistrate Judge's "finding is based on [her] decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. at 575.

Accordingly, Colón-Torres's first objection is **OVERRULED**.

    **(iv)**     **Second objection: reliability of the confidential informant/information**

Colón-Torres's second objection takes issue with the R&R's conclusion holding that the "informant's tip had sufficient indicia of reliability to justify the officers' reasonable suspicion on the day of the intervention." **ECF No. 114** at 8. Colón-Torres objects via a superficial challenge to the "indicia of reliability" of the tip provided by the confidential informant that led to his arrest. **ECF No. 121** at 3. Particularly, he points out that the Magistrate Judge did not receive evidence or testimony establishing that the confidential informant had "first-hand knowledge,"

---

[7] "[Agent Esteves-Díaz]: Yes, they had freedom of movement in the area. BY MR. HUTCHINS: Q. Let me ask a hypothetical question. If one of the defendants had said, 'I'm leaving', would you have stopped him? A. No." **ECF No. 113** at 100.

any "interest," if the informant "would be held accountable for providing false information," or information about the informant's "motives." *Id.* In addition, he takes issue with the fact that Agent Martínez-Rodríguez, the Agent who received the tip, did not document the information because he was on leave. *Id.* However, no authority or caselaw in support was cited by Colón-Torres.

First, the Court notes that this argument was already address by the Magistrate Judge. *See* **ECF No. 114** at 7-10. A party's objections to a Magistrate Judge's report and recommendation "are not to be construed as a second opportunity to present the arguments already considered by the Magistrate Judge." *Betancourt v. Ace Ins. Co. of Puerto Rico*, 313 F. Supp.2d 32, 34 (D.P.R. 2004). Where objections are repetitive of the arguments already made to the Magistrate Judge, a *de novo* review is unwarranted. *See, Rivera-García v. United States*, Civ. No. 06-1004 (PG), 2008 WL 3287236 at *1 (D.P.R. Aug. 7, 2008) ("where a party's objections are simply a repetition of the arguments he made to the magistrate judge, a *de novo* review is unwarranted. Instead, the report and recommendation is reviewed by the district court for clear error."); *see also, Monfort-Rodríguez v. Hernández*, 286 F. Supp. 2d 119, 121 (D.P.R. 2003) (disregarding a party's objections where it merely "disagree[d] with the Magistrate's factual findings but offer[ed] nothing to bolster their objections except their own interpretation of the evidence" and did not "offer any new substantive arguments in favor of their position.").

Regardless of the standard of review, Colón-Torres's argument is without merit. **ECF No. 121** at 3. Contrary to his general claims, the First Circuit has provided a "non-exhaustive" list of

factors the Court may consider in evaluating the reliability of tips or confidential information provided by an informant. Among others, "[t]hese include[…] probable veracity… whether an informant's statements reflect first-hand knowledge… some or all of the informant's factual statements were corroborated… whether a law enforcement officer assessed, from his professional standpoint, experience, and expertise, the probable significance of the informant's information." *United States v. Simpkins*, 978 F.3d 1, 7 (2020).

According to the record, an unpaid confidential informant called Agent Martínez-Rodríguez on May 7, 2020 indicating that "in the ferry from Culebra to Ceiba, two [male] individuals were going to board and one of them wearing a red shirt, carrying a blue and black bag and another one with a gray shirt carrying a black bag." **ECF No. 103** at 9. "[O]ne of them was fat and dark skinned while the other one was skinny and dark skinned." *Id.*, at 23. The informant told the agent that the boat was leaving Culebra, was on its way to Ceiba, Puerto Rico, and that both individuals were each carrying "kilos of cocaine" in their bags. *Id.*, at 13. Agent Martínez-Rodríguez had known the informant for approximately five months before. *Id.*, at 50. The informant had provided accurate information to Agent Martínez-Rodríguez before, which led to the seizure of cocaine from the same ferry at least on three previous occasions. *Id.*, at 56.

Based on the above alone, in this Court's view and pursuant to the test and factors established by the First Circuit, Agent Martínez-Rodríguez had sufficiently ample information and previous dealings with the confidential informant for this Court to credit his credibility.

Importantly, Colón-Torres did not object the R&R's determination of credibility of Agent Martínez-Rodríguez, who received the tip directly from the confidential informant.

Even if Agent Martínez-Rodríguez's testimony was not enough, the information was relayed to two other agents, Agents Feliciano-Mercado and Esteves-Díaz. *Id.* at p. 11. Both agents corroborated Agent Martínez-Rodríguez's testimony. Specifically, Agent Feliciano-Mercado testified that he corroborated the tip before engaging with defendants because he was able to identify both defendants as soon as they came out of the boat thanks to the detailed information provided by Agent Martínez-Rodríguez. *See* **ECF No. 104** at 37 ("at the outset"). Moreover, the agents' testimonies is perfectly consistent with the video (of the intervention at the pier) at Government Exhibit 10.

Pursuant to this Court's independent review of the whole record, the credible testimony and evidence in this case is overwhelming. There is absolutely no doubt that the agents had, and understandingly so, reasonable suspicion formed by the tip provided by the confidential informant "because of the sufficient indicia of reliability." *United States v. Jones*, 700 F.3d 615, (1st Cir. 2012). After all, what the law requires is for the government to provide "some information from which a court can credit the informant's credibility." *U.S. v. White*, 804 F.3d 132, 136 (1st Cir. 2015). Indeed, and taking the analysis beyond the contours of the arguments raised in the objections, in this case, the tip triggered a reasonable suspicion. *United States v. Jones*, 700 F3d at 621. At that point, a *Terry* stop was reasonable. Notably, pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968), a warrantless stop is reasonable if the officer, as in this case, suspects that the person

apprehended is committing or has committed a crime. *United States v. Monteiro*, 447 F.3d 39, 43 (1st Cir. 2006). After that, K-9 Onyx's alert (which is not a search *per se*) to possible controlled substances and defendant's subsequent consent (unchallenged) to the search, along with the totality of the record, are more than enough to deny defendant's objection.

Accordingly, Colón-Torres's second objection is **OVERRULED**.

### (v) Third objection: certification of K-9 officer Onyx

Finally, in his third and last objection, Colón-Torres objects to the Magistrate Judge's determination finding that the "K-9 alert was reliable." **ECF No. 121** at 4. He raises the argument simply because one of the government's exhibits supposedly did not include a "certification" as to both the handler and the K-9. *Id.*

This argument was also addressed with a fine-tooth comb by the Magistrate Judge in the R&R, which, as explained before, raises the standard of review. *See* **ECF No. 114** 10-13. Accordingly, "a *de novo* review is unwarranted. Instead, the report and recommendation is reviewed by the district court for clear error." *Rivera-García v. United States*, 2008 WL 3287236 at *1. A finding of fact will amount to clear error "only if, after considering all the evidence, [the court is] left with a definite and firm conviction that a mistake has been made." *U.S. v. White*, 804 F.3d at 136 (*quoting United States v. Mousli*, 511 F.3d 7, 11 (1st Cir. 2007)). "So long as any reasonable view of the evidence supports the decision, the district court's ruling will be upheld." *United States v. McLellan*, 792 F.3d 200, 212 (1st Cir. 2015).

But even if the Court stowed away the clearly erroneous standard of review in favor of a de novo review, the objection is without merit. Notably, as with the other objections, Colón-Torres's argument is contrary to the unchallenged testimony and is clearly inapposite under the applicable law.

To wit, Agent Esteves-Díaz testified:

> Q. Now, directing your attention to Government's 16-A and B. Do you recognize those?
> A. Correct.
> Q. What is that?
> A It's the K-9's monthly evaluation.
> Q. For what month and what year?
> A. For April 29 of 2020.
> Q. Was he tested on that day?
> A. Correct.
> Q. What was he tested for?
> A. To corroborate that the K-9 maintains his standards with the smells.
> Q. What were the results of this testing on April or in April of 2020?
> A. He found his objectives in all of them.

**ECF No. 113** at 57. Moreover, Agent Esteves-Díaz also testified,

> Q. So, directing your attention back to May 7, 2020. On that date was Onyx certified in the detection of cocaine by the government of Puerto Rico?
> A. Correct.
> Q. Now, subsequent to the interdiction that occurred on May 7, was he also tested on May 10th?
> A. Correct....
> Q. I show you what's been marked Government's 17-A and B. Do you recognize that document?
> A. Correct.
> Q. What is that?
> A. The monthly document that is filled in.
> Q. Was he tested on May 10th?
> A. Correct. 21

> Q. Are these tests being done for the purposes of certification of the dog?
> A. Correct, to maintain certification.

**ECF No. 113** at 58. Finally, during the government's re-direct, Agent Esteves-Díaz, reiterated:

> Q. On May 7, 2020, were you certified as a dog handler by the government of Puerto Rico?
> A. Correct because it would expire in August 19 of 2020.
> Q. Now I've asked you about you. Let me ask you about Onyx. Was he also certified by the government of Puerto Rico on August 7, 2020?
> A. Correct, it is one single certification.

**ECF No. 113** at 100.

Therefore, contrary to his unsupported objection, the unchallenged testimony clearly reflects that the K-9 and his handler were duly certified at the time of Colón-Torres's arrest. Moreover, Colón-Torres did not even attempt to call into question the Magistrate Judge's legal analysis, reasoning that formal certifications are not required to find a K-9's alert reliable. The Magistrate Judge correctly pointed out (and Colón-Torres did not dispute):

> in any event, the case law is clear that there are no specific requirements to rely on a dog alert for probable cause. The U.S. Supreme Court in *Florida v. Harris*, 568 U.S. 237, 248 (2013), expressly rejected the premise that a drug-detection dog's reliability depends on "an inflexible checklist of state requirements". In *Harris*, the U.S. Supreme Court held that the absence of a formal certification is not in and of itself an issue and that "[i]f the State has produced proof from controlled settings that a dog performs reliably in detecting drugs, and the defendant has not contested that showing, then the court should find probable cause". *Id*. The Government here has submitted sufficient proof that K-9 Onyx performed reliably in the detection of cocaine both before and after the day of the intervention.

Under the factual scenario described above, which in turn is based on evidence presented in Court and on record, the government has verified and corroborated the informant's tip that

provided the reasonable suspicion enabling them to conduct a *Terry* stop. As described on record, the stop was brief (not exceeding seven minutes— from the time the passengers disembarked the ferry to the time Defendants were placed under arrest). At the time K-9 Onyx alerted to the possible existence of contraband (which does not constitute a search), probable cause for the defendant's arrest materialized. The subsequent detection of the controlled substances was the result of a search to which each defendant consented. Notably, in his objections to the R&R no objection or legal challenge was presented to the Magistrate Judge's conclusions in this regard.

For all the above, the third and final objection is **OVERRULED**.

## III. Conclusion

Based on all the above and after a careful review of the evidence, the testimony and the record in this case, the Court hereby **Overrules the Objections at ECF No. 121**; **DENIES** the motion for Joinder at **ECF No. 122**; **ADOPTS** the R&R. **ECF No. 114**; and consequently, **DENIES** the motions to suppress at **ECF Nos. 46, 61**.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 31th day of July, 2023.

S/AIDA M. DELGADO-COLÓN
**United States District Judge**